UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ELECTRICAL WORKERS LOCAL 369
BENEFIT FUND, *et al.* PLAINTIFFS

v. CIVIL ACTION NO. 3:11-CV-540

MARINE ELECTRIC COMPANY DEFENDANT

**MEMORANDUM OPINION**

Plaintiff International Brotherhood of Workers, AFL-CIO, Local Union Number 369 ("Local 369"), a labor union, negotiated a Collective Bargaining Agreement ("CBA") with the National Electrical Contractors Association, Louisville Chapter ("NECA"). Defendant Marine Electric Company, a member of NECA, accepted the responsibilities of the CBA by signing a written letter of assent to NECA acting as its collective bargaining representative. Pursuant to the CBA, assenting employers such as Marine Electric were obligated to make contributions to the following trust funds (collectively, "Trust Funds"), each of which are plaintiffs in this action: the Electrical Workers Local 369 Benefit Fund; the Electrical Workers Local 369 Retirement Fund; the National Electrical Benefit Fund; the Louisville Electrical Joint Apprenticeship and Training Committee; and the Louisville Electrical-Management Cooperative Trust Fund.

Marine Electric notified Local 369 that it was suspending its operations and closing its business effective September 27, 2011. Marine Electric failed to make its contributions to the Trust Funds for August 2011 and for the portion of September 2011 when it was in operation. The Trust Funds, using contribution reports prepared by Marine Electric, have calculated the amounts of

contributions that should have been made to them for each of those months; additionally, the Trust Funds each have rules specifying a particular amount of liquidated damages for delinquent payments and interest on unpaid contributions.

On September 28, 2011, Local 369 filed with the County Clerk of Jefferson County, Kentucky, an employee lien statement on behalf of its members who were employed by Marine Electric in the previous six months. The notice stated that the employees had a lien pursuant to KRS §§ 376.150, 376.160, and 376.180 on the property and effects involved in Marine Electric's business "for wages (including all benefits provided in the applicable collective bargaining agreements) due to said employees." The statement continued that the lien "shall be superior to the lien of any mortgage or other encumbrance thereafter created," and for "wages coming due to said employees within six months of distribution of Marine Electric Company's property or effects among creditors [the lien] shall be superior to the lien of any mortgage or other encumbrance theretofore or thereafter created."

Local 369 and the Trust Funds brought this action to collect unpaid contributions, liquidated damages, and interest owed to the Trust Funds. In addition, the plaintiffs seek to enforce the lien filed by Local 369. The plaintiffs state that this court has jurisdiction over the claim for unpaid contributions under the Employee Retirement Income Security Act of 1974 ("ERISA") and the Labor Management Relations Act of 1947 ("LMRA") and over the claim for enforcement of the lien pursuant to pendent jurisdiction.

The plaintiffs moved for summary judgment on the claim for unpaid contributions, liquidated damages, and interest, as well as for enforcement of the lien filed by Local 369. Marine Electric filed a combined response and a cross motion for summary judgment. In doing so, Marine Electric sought

a declaration that Local 369's lien was not valid or enforceable. Alternatively, Marine Electric sought a declaration that the lien was not entitled to priority over secured claims. However, in its response and cross-motion, Marine Electric did not contest the plaintiffs' claim for unpaid contributions, liquidated damages, and interest.

To prevail on a motion for summary judgment, the movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact arises when there is sufficient evidence on which the jury could reasonably find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1985). The disputed issue need not be resolved conclusively in favor of the non-moving party, but that party must present sufficient probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-289 (1968). The evidence must be construed in the light most favorable to the non-moving party. *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004).

First, the evidence put forth by the plaintiffs is sufficient to show that Marine Electric has failed to pay contributions for August and September 2011 that the CBA required the company to pay. Marine Electric having put forth no competing evidence as to that point, the court finds that summary judgment is warranted on the plaintiffs' claims that they are entitled to the unpaid contributions. Moreover, as Marine Electric does not contest in any way the calculations of the plaintiffs as to what the defendants owe in damages on those claims, the court will enter a final judgment on those claims using the plaintiffs' calculations of unpaid contributions, liquidated damages, and interest owed them by Marine Electric. Further, in their amended complaint and proposed order, the plaintiffs request that this court award them reasonable attorney's fees. 29

U.S.C. § 1132(g)(2) provides that the court shall award "reasonable attorney's fees and costs of the action, to be paid by the defendant" when a plan obtains a judgment in its favor for delinquent contributions. Accordingly, the court will award the plaintiffs reasonable attorney's fees and costs and will direct them to file supporting documentation as to the amount of attorney's fees and costs within thirty days of the entry of the order accompanying this opinion.

The court turns to the issue of the lien. Marine Electric contends that the lien is not valid or enforceable for two reasons. First, Marine Electric asserts that the Kentucky lien laws under which Marine Electric asserts the lien are preempted by ERISA. Second, Marine Electric argues that the lien is invalid under state law. The court takes up the preemption argument first.

The starting point of any preemption analysis is a presumption that Congress does not intend to supplant state law. *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995) (citing *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)). Thus, federal law will not supersede state law "'unless that was the clear and manifest purpose of Congress.'" *Id.* (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947).

ERISA comprehensively regulates employee benefit plans in order to protect participants in benefit plans and their beneficiaries. *See* 29 U.S.C. §§ 1001(b), 1002. As part of its comprehensive scheme, ERISA preempts some state laws relating to employee benefit plans. *Travelers*, 514 U.S. at 651. Specifically, ERISA provides that its provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a).[1] The Supreme Court has interpreted the phrase "relate to" to have its "broad common-sense meaning" of "'[h]aving a connection with or reference to'" a benefit plan. *Metro.*

[1] ERISA exempts from preemption state laws regulating insurance, banking, or securities. Neither party contends that the lien laws at issue in this action falls into one of those categories.

*Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983)); *see Travelers*, 514 U.S. at 656.

The Supreme Court has stated that "the pre-emption clause is not limited to 'state laws specifically designed to affect employee benefit plans.'" *Pilot Life*, 481 U.S. 41, 48 (1987) (quoting *Shaw*, 463 U.S. at 98). In *Pilot Life,* the Supreme Court stated:

> The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. "The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted . . . provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly."

*Pilot Life*, 481 U.S. at 54 (quoting *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985)). However, while the *Pilot Life* decision suggested that ERISA preemption was "deliberately expansive," 481 U.S. at 46, the Supreme Court has since narrowed the scope of ERISA preemption. *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005). In *Travelers*, the Supreme Court directed courts to consider the objectives of the ERISA statute in order to guide the preemption analysis. 514 U.S. at 656. The Supreme Court continued that, in passing ERISA's preemption section,

> Congress intended "to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government . . . , [and to prevent] the potential for conflict in substantive law . . . requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction."

*Travelers*, 514 U.S. at 657 (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 484 (1990)).

The Sixth Circuit has distilled those pronouncements by the Supreme Court to conclude that the following categories of state laws that are preempted by ERISA: (1) laws that "'mandate

employee benefit structures or their administration'"; (2) laws that "provide 'alternate enforcement mechanisms'"; and (3) laws that "'bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself.'" *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 698 (quoting *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1468 (4th Cir. 1996)). On the other hand, the Sixth Circuit stated, ERISA does not preempt traditional state laws of general applicability that do not bear on the relations among traditional ERISA plan entities, such as plans, principals, employers, fiduciaries, and beneficiaries. *Id.*

Having set forth the foregoing standards, the court turns to the question of whether the Kentucky lien laws in question "relates to" ERISA benefit plans. In order to make that determination, however, the court first takes the time to examine the Kentucky lien laws. It would be impossible for this court to say that the laws do or do not "relate to" ERISA benefit plans without examining those laws first.

There are three main Kentucky statutes that the plaintiffs contend support their lien. First, KRS § 376.150(1), states:

> When the property or effects of any . . . business . . . are assigned for the benefit of, or are to be distributed among creditors, whether by operation of law or by its own act, the employees of the owner or operator of the business shall have a lien upon the property and effects which have been involved in the business and upon the accessories connected therewith, including any interest in real property used in carrying on the business.

KRS § 376.180 provides that a lien under KRS § 376.150 attaches when a company suspends its business, and the lien may be enforced by proceedings in equity. Finally, KRS § 376.160 provides:

> Any lien provided for in KRS 376.150 and 376.180 shall be superior to the lien of any mortgage or other encumbrance thereafter created, and shall be for the whole amount due the employees as such . . . . Liens of employees for wages coming due

> to them within six months before the property or effects shall come to be distributed among the creditors shall be superior to the lien of any mortgage or other encumbrance theretofore or thereafter created.

It is immediately apparent from reading the lien laws that they do not explicitly refer in any way to ERISA benefit funds. Thus, the question is whether the lien laws are "connected to" ERISA plans in some other manner that would render them preempted. However, as the court interprets the Kentucky lien laws, they have nothing to do with ERISA plans at all. Specifically, as will be explained below, the Kentucky lien laws do not authorize liens for unpaid contributions to ERISA plans.

Of the three Kentucky statutes under which Local 369 asserts its lien, two of them–KRS §§ 376.150 and 376.180–set forth the circumstances under which a lien in favor of the employees of a business arises by operation of law. It is the third statute, KRS § 376.160, that is of concern to the analysis here, since that is the statute that sets forth the particular types of obligations that such liens secure. In particular, KRS § 376.160 allows for liens for "the whole amount due the employees as such," which get priority over any liens filed thereafter. The statute continues that liens for "wages" due to the employees during the final six months prior to the company's property or effects being distributed among creditors get a super-priority, in that such liens get priority over other encumberances even if they were created before the wage lien.

The plaintiffs argue that the term "wages" encompasses contributions owed to the Trust Funds under the CBA. The word "wages" is not defined in the statute, nor is it defined anywhere else in the statutory lien chapter of the Kentucky Revised Statutes. Additionally, the Kentucky Supreme Court has not addressed the meaning of that term as it is used in KRS § 376.160. Thus, the court must turn to other sources in an attempt to divine the definition of that term.

Although the lien laws do not define "wages," the Kentucky Wages and Hours Act contains a definition of that term:

> "Wages" includes any compensation due to an employee by reason of his or her employment, including salaries, commissions, vested vacation pay, overtime pay, severance or dismissal pay, earned bonuses, and any other similar advantages agreed upon by the employer and the employee or provided to employees as an established policy.

KRS § 337.010(1)(c). Payments owed by employers directly to benefit funds are not one of the enumerated items in the statute (i.e. "salaries, commissions, vested vacation pay, overtime pay, severance or dismissal pay, earned bonuses"). Nor do they fall within the category of "other similar advantages agreed upon by the employer and the employee or provided to employees as an established policy." *Id.* The key is the word "similar"; the general provision only encompasses "advantages" that are of the same type as those listed before it. And the enumerated items consist only of payments made directly by the employer to the employee, not contributions owed by the employer to third-party funds.[2]

The United States District Court for the Eastern District of Kentucky has also reached the conclusion that the definition of the term "wages" in KRS § 337.010(1)(c) does not include "benefits such as retirement plans, health and disability insurance, and life insurance." *Francis v. Marshall*, 684 F. Supp. 2d 897, 911 (E.D.Ky. 2010). Instead, noted that court, "Kentucky courts have long held that such benefits are 'fringe benefits' – not wages or salary." *Id.* (citing *Caldwell County Fiscal Court v. Paris*, 945 S.W.2d 952, 954-955 (Ky. Ct. App. 1997)); *see also Rainey v. Mills*, 733 S.W.2d 756, 758 (Ky. Ct. App. 1987) (finding that "fringe benefits" – including "employer pension plan

---

[2] The court notes that there is no indication in the CBA or in any of the other evidence put forth by the parties that the money owed by Marine Electric to the Trust Funds came from withholding a portion of the employees' direct pay.

contributions, health insurance benefits, and life insurance premiums" – were not included in the definition of "wages" contained in the Kentucky Workers' Compensation Act at KRS § 342.140). Consistent with the analysis above, the court believes that if the Kentucky Supreme Court was asked to determine whether the term "wages" in KRS § 376.160 encompasses unpaid contributions owed by an employer directly to a benefit fund, it would find that the answer to that question is no.

However, that does not end the analysis of the language in KRS § 376.160. The statute also uses the phrase "the whole amount due the employees as such" to describe the total amount for which a lien arises in favor of the employees, although anything other than wages due for the last six months of a company's operations are not entitled to super-priority. While the phrase "the whole amount due the employees as such" can arguably be read to be more expansive than the word "wages," the court need not decide here the precise scope of that phrase. Instead, for the purposes of assessing whether the lien laws are preempted by ERISA, it is enough to say that the phrase does not encompass payments owed directly by employers to ERISA plans. The court draws this conclusion from the language of the lien law itself. The law provides that the lien is for an amount "due the employees." That language suggests that the employees would have a lien for any amount that should have been paid directly to them. On the other hand, the language suggests that the liens do not encompass amounts the employers owed directly to non-employees, such as ERISA plans, even if the payments to non-employees would be for the benefit of the employees; such payments are not ones that were "due the employees."

Because the court holds that the lien laws do not cover amounts due by an employer directly to an ERISA plan, there is no basis for finding any connection or relation between the lien laws and ERISA. Accordingly, the court finds that the Kentucky lien laws are not be preempted.

However, by the same token, the court's construction of the Kentucky lien laws means that the plaintiffs' attempt to enforce the lien to collect unpaid contributions to the Trust Funds must fail. As explained above, the lien law does not provide for liens for unpaid contributions to benefit funds.[3]

In sum, the plaintiffs are entitled to summary judgment as to the claim that Marine Electric owes them unpaid contribution payments in the amounts set forth in their motion for summary judgment and proposed order. However, the defendants are entitled to summary judgment as to the plaintiffs' attempt to enforce the lien for unpaid contributions.

A separate order will issue in accordance with this opinion.

February 14, 2013

**Charles R. Simpson III, Senior Judge**
**United States District Court**

[3] The court notes that the notice of lien filed by Local 369 states that it is "for wages (including all benefits provided in the applicable collective bargaining agreements) due to said employees." The court holds today only that the lien is unenforceable as to the unpaid contributions Marine Electric owes to the Trust Funds that are plaintiffs here. To the extent that the lien is also meant to secure amounts owed by Marine Electric other than those unpaid contributions – such as wages for the employees – the court expresses no opinion as to the viability or enforceability of the lien as to those amounts.